v. ATC Brokers. It pleases the Court. Sorry, Your Honor. I jumped the gun, didn't I? You did jump the gun, Mr. Sherker. I did. So, let me make sure I understand this. You're representing ATC? And McCoonian, Your Honor. And the appellant here is Wyand? Is that right? That's correct. I will yield. Okay. Yeah, okay. So, Mr. Perez is who we need to hear from first, I believe. Mr. Perez? Good morning, Your Honor, counsel. May it please the Court. My name is Jared Perez. I represent the appellant, Burton Wyand, who's the receiver in this case. The first and most important argument I'd like to make is that the District Court erred by dismissing the receiver's $22 million fraudulent transfer claims because it misinterpreted this Court's decision in Isaiah v. JPMorgan Chase and ignored this Court's decision in Wyand v. Lee. We have distinguished between fraudulent transfer claims and common law tort claims and at least for fraudulent transfer claims, it seems to me we long ago adopted Judge Posner's reasoning about evil zombie standing, so to speak, right? What the District Court did was fail to distinguish between the two kinds of claims and assumed that if you don't have standing for one, you don't stand for the other. Is that right? That's absolutely correct. The District Court has no analysis in its order of the receiver's fraudulent transfer claims. It just goes through the Isaiah tort claim issues and then throws everything out altogether under the same name. So once the receiver takes control of the operator of the Ponzi scheme, our rule, like the Seventh Circuit's rule and a number of circuits, is that the receiver of those entities now has standing to sue on behalf of the entities that were injured by the Ponzi scheme operator, right? That's absolutely correct and Isaiah recognizes that. It says, we held in Lee that the receiver for the corporation has standing to sue the recipients of fraudulent transfers under FUPA. Any reason why we shouldn't go ahead and address the personal jurisdiction objection of ATC brokers, even though the District Court didn't address it? It seemed to me that the District Court likely has specific jurisdiction over ATC brokers. There's evidence about it. That record was developed about it. There were arguments about it and it appears to me that there is personal jurisdiction. Sure, I can address the personal jurisdiction. My first question is, is there any reason for us not to go ahead and decide that? Your opposing counsel has said, we can affirm because for any reason supported by the record and that the District Court lacked personal jurisdiction. As I understand it, your argument is, the court had personal jurisdiction. It seems to me, the issue is squarely presented, we could decide that. I think that's right. There's evidence in the record. It was briefed. Could you pull the mic up closer to your mouth there? No one's been really doing that. Sure. Yeah, that's better. There is evidence in the record on personal jurisdiction. It was briefed. Document 55 is the receiver's briefing on the issue and attaches a number of the evidence that I would go through to cite it. It is correct that the court can make its decision based on whatever evidence is in the record. Why then did you ask us to remand to the District Court to decide the personal jurisdiction issue? Well, I think typically this court doesn't decide issues that haven't been addressed in the District Court. The court believes that the personal jurisdiction exists and feels like the record exists to make that finding. I'm certainly not going to tell the court to remand. Wouldn't it be a waste? I mean, is there going to be anything more to be developed? It was fully developed and argued in the District Court. Your opposing counsels asked us to affirm on that ground. It seems that we can affirm for any grounds supported by the record. We should entertain that argument. Is there any authority that says we should remand that so the District Court can consider it in the first instance and then we could end up with a second appeal about that? If the court is going to affirm the District Court on that basis, I would recommend . . . You would appreciate . . . you don't want that to . . . No, I do not, Your Honor. Yeah, you don't want that to be done, but what difference does it make whether it's affirmed or not? Your opposing counsel asked us to affirm on that ground. Let's say he's wrong, right? You'd like that. You only want us to consider it if we're going to rule in your favor is what you're saying. Well, I think that because the District Court didn't get into these factual issues, I don't think that this court should . . . based on those facts, isn't it? I mean, there are facts in the record showing that the Mnuchin's operated the business out of California. I think they would dispute that, but I think the record . . . I think that parties dispute which transactions are relevant for these purposes of purposeful I think the parties agree on many of the facts, what the corporate filings say, what the social media says, what the deposition testimony says, that the Mnuchin's reside in California, that they own the company, and that they operate the company from California, and they make occasional trips to the U.K. where the back office is. I think there is evidence in the record of those things, and that supports finding of personal jurisdiction in this case. Yeah. I mean, so as I understand it, ATC says, look, all the relevant financial transactions occurred in the U.K. because that's where they held their bank account. But it's also . . . it appears to me undisputed that ATC brokers executed on behalf of clients on London Forex markets using funds already deposited in clients' brokerages accounts, right? And that the relevant transactions were the deposits of the funds into the brokerage accounts that OTC held at ATC brokers. But those accounts were transferred from the United States. There were records of $22 million in transfers from Bank of America and Citibank accounts into the brokerage accounts, right? Correct. And Anil's deposition testimony says that corporate officers ordered money to be deposited into the brokerage accounts primarily from Florida, right? Correct. Okay. And all those are undisputed facts, aren't they? I believe so, and you'll hear otherwise in a minute if they're not, but . . . As I understand what we'll hear from your opposing counsel, the real dispute is about which transactions are relevant, not what the transactions actually were. You see the distinction? Yes, I believe so. I think even under their view of which transactions are relevant, the amount of activity that occurred in California meets the nerve center control test to show that these entities were operated from California. The directives to transfer the funds occurred from corporate offices located in Florida, right? Correct. Which is what you think is important. Correct. And we have personal jurisdiction under the receivership statutes, 754 and 1692, with them being out in California. Your request that we remand that issue would make a lot of sense to me if we needed to have jurisdictional fact-finding by the district court because we have a he said, she said situation about what the relevant facts are. That doesn't appear to me to be what was going on with this record. It appears to me that what actually happened is undisputed, and the parties dispute which transactions are important for determining that. You see my point? I believe I do, and it seems like maybe I'm not, but I think that the court has evidence in the record to address the personal jurisdiction issue. If that's the bottom line question that started this line of question, can you address it without remanding it? I think the court can. Help me understand the basis for in personam jurisdiction here. Is the argument that there was sufficient context, minimum context here, that is to say we're looking at the state law, we're applying the state's long arm statute and the 14th Amendment due process test, or alternatively are we looking at this question where a federal statute provides the basis for jurisdiction, in which case we'd be looking not under the 14th but under the 5th Amendment perhaps? Or are you arguing both? We do have jurisdiction under the receivership statutes, but what I refer to that is 28 U.S.C. 754 and 1692. 28 U.S.C. 754 gives the receiver exclusive jurisdiction and control over property located in any district as long as you file the appointing order in that district, and 1692 authorizes nationwide service of process to be able to go out and serve those people in the other districts and bring them in to the receivership court. It's kind of the whole point of having receivership is to centralize the property, the disputes and the issues before one court who has jurisdiction over all of that. And the property includes not just money that is transferred, but causes of action. So any chosen action is a property right, and Hale v. Henderson and other cases have recognized that a chosen action is something that can confer jurisdiction on 754 and 1692, even if there's not physical property that you're talking about like a house or a car or a piece of personal property. And because so much of this activity was engaged in California and from Florida, where it would satisfy minimum context even if that applied, there's a chosen action that touches that state and their jurisdiction there in California, and by complying with the receivership statutes, the receiver obtained personal jurisdiction over the defendants to hear all disputes relating to the receivership and receivership property, including its causes of action, in the United States District Court for the Middle District of Florida. One question before you sit down. Can we find anywhere in the record before the district court where he asked for leave to amend the complaint? In the opposition motions. So it was noted in the opposition motions that if the court denies for any reason that we would like the opportunity to remand. And it's a separate motion for leave to amend was not filed. I mean that just it is what it is, and I'm aware there's case law out there that says that's the better practice. No, no. What it says, what Newton says is that when a request for leave to file is simply embedded within an opposition memorandum, the issue has not been raised properly. That's what it says, right? And there are cases that say that and come out with that holding. And I think I would just say that I think the court can resolve the issues without remand on the existing things. We did the innocent and honest people that exist for the tort standing issue, but there are alleged innocent shareholders. So remand is not necessary for the court to reverse the district. It's one thing to have innocent shareholders. There's no evidence, it seems to me. It seems to me the record's undisputed that the malefactors are the ones who exercise complete control. I don't think I would disagree with that. I think you have to. I think the complaint itself alleges that. I think you have to distinguish between Joseph Anile and Michael DeCorda who are the ones who are criminally prosecuted for the fraud and some of the other categories of people who were involved. And the complaint doesn't say that the CFT defendants had exclusive control. And what Isaiah requires is an innocent stockholder. And that's what the courts say over and over and over again is just one innocent stockholder. And we plead that. So even if there was some degree of control, those innocent stockholders existed and there was somebody to whom the defendants could have blown the whistle to address their duties and not aid in a bad scheme. Okay. Let's hear from Mr. Shurker and from Mr. Shelton. May it please the court, correctly this time, Chief Judge Pryor, I must have been in communication with you extrasensory because I had a feeling I'd be addressing my role as an appellant on personal jurisdiction and may have jumped the gun. Judge Pryor, your question about leave to amend, I'd refer the court to Record 51, page 23, the last two sentences of the receiver's response to the motion to dismiss. For the above-discussed reasons, the receiver has sufficiently alleged his claims. However, if this court disagrees, the receiver has the right to replead to correct and or add relevant allegations. It was in a response. It doesn't comply in any sense. That issues off the table. Judge Pryor, on personal jurisdiction, I'd refer the court to pages 16 and 17. Let's clear up one thing. Yes, sir. The district court just misread our precedence on the fraudulent transfer standing, did it not? I mean, it's pretty clear that we have adopted evil zombie standing and the district court just missed that. Here's what happened, Your Honor. Our motion to dismiss did not seek to dismiss the fraudulent transfer claims under odd standing. But the district court dismissed them nevertheless, failing to distinguish between the two kinds of claims. That's skipping a step, Your Honor, if the court would allow me. Okay. There was no response from the other side about the fraudulent transfer claims. That issue was never raised in their response to the motion. Was it raised in yours? No, sir. No. We didn't raise the argument. Well, why would they respond to something you didn't raise? Well, I'm sorry, Your Honor. McCoonian moved to dismiss under, because there's no FUFTA claims against him, on the tort claims. Right. Okay. ATC moved to dismiss on personal jurisdiction. The issue wasn't before the district court. The district court order doesn't analyze Isaiah, doesn't analyze Wyand. The arguments were dismissed. I understand. I understand. McCoonian prevailed on the tort claims, and I think unquestionably rightly so, in light of the robotic and evil zombie corporations and such. And the court said that there's no standing, so therefore it's gone as to ATC did not address personal jurisdiction. There was no 59E motion. There was no request for reconsideration. The other side didn't... It doesn't have to be. No, I understand, Your Honor. But the other side didn't raise their hands and say, you jumped the gun here, Judge. These arguments were never raised, and they're raising it for the first time... They can raise that for the first time here. Then they can raise it for the first time here, Your Honor. I'm certainly not going to argue. But this issue should have been presented to the district court if it was going to be raised here, we submit, that the court mistakenly ruled on standing. Fine and well, Mr. Shirker. Nevertheless, there is standing for fraudulent transfer claims, right? And we're really talking about personal jurisdiction, aren't we? There's one other step, Your Honor, if I might. Okay. We also raised in our brief the alternative argument that there was, just as in Isaiah, there was on the merits no basis for the fraudulent transfer claim. We raised in our brief the argument, and I believe we're correct, that we are no different than the depository of J.P. Morgan. It's a depository in Isaiah. The money was put into brokerage accounts. That's different from standing. Of course it is. And you could make that argument on remand, but insofar as the district court said there was a lack of standing, that's just contrary to our precedent on fraudulent transfers, right? That's correct, Your Honor. Okay. So we're really talking at that point then about personal jurisdiction, aren't we? Which also wasn't addressed by the district court. But it was fully briefed, and you've asked us to affirm on that ground, right? We have, Your Honor. Okay. And the response to that, and this is where I was going when I stood up both times, was on page 16 and 17 of the reply brief. That's the full argument on specific jurisdiction. And Chief Judge Pryor, you did a far better job than my opponent did in elucidating a personal jurisdiction argument, because there's almost nothing on those pages. It wouldn't be the first time I did. No, sir, I'm sure not. But there's nothing on those pages of the brief that supports the arguments that were being heard this morning, or the discussion that was heard this morning. Well, we have to figure out the right answer, right? I understand. If the court is inclined to go beyond the arguments that are before you today on personal jurisdiction, on those two pages of their brief, then we would agree that a remand would be appropriate. Oh, you would like a remand now? Based on their brief, we believe we win. Based on the arguments that you're talking about, we would need to flesh those out. All right. So why don't you explain that to me, Mr. Shurker? Why should we remand personal jurisdiction question to the district court? Because on the face of their brief, they're wrong. They're arguing for California jurisdiction. They're not talking about Florida. They're not talking about $22 million being transferred. None of that appears in their arguments before this court. None of that appeared in their arguments in the district court. If I can't argue that we should prevail on the merits under Isaiah on fraudulent transfer, I submit that it would be unfair for them to prevail on personal jurisdiction, on arguments that they're not making. And if I make those arguments on remand, then they should be required to face those arguments. The difference between the issue not being preserved and the arguments being made being not good arguments, but the record nevertheless requiring the district court to find that personal jurisdiction exists. Those are two different things. When I look at this record and understand the law and which transactions are really relevant, it seems to me that the decisions made in Florida and all the relevant transactions originating in Florida and your client's awareness of doing business with someone based in Florida is more than sufficient to support the exercise of impersonum jurisdiction. Well, our argument- Specific jurisdiction. Our argument would be that the alleged wrongful acts all occurred in the United Kingdom, in a business that was incorporated in the United Kingdom, operating under United Kingdom law. So that money was transferred by what my opponent chooses to call investor victims in Florida doesn't create the wrongful act in Florida. But again, Judge Pryor, I'm doing this on the fly because they didn't brief this argument, didn't make this argument in the district court. Well, they didn't brief personal jurisdiction in the blue brief at all. Correct. Well, there's two pages, Your Honor, 16 and 17. Is that in the reply brief or in the blue brief? I'm sorry, in the cross-reply brief. Right. So the blue brief says nothing about personal jurisdiction. Does not. You raise it in the red brief. They come back in the reply brief and talk about it on pages 16 to 17. That's correct. With regard to that issue, you said earlier in response to a question the chief judge asked you that there were facts that had to be fleshed out in the trial court. Can you tell me what they would be? Well, the discussion that Chief Judge Pryor was having with my opponent about money being transferred out of Florida. I mean, we have records about all of that. I understand that, but that has never been briefed. That's different from it being evidence being developed because there would be some dispute about it. There's no dispute about that, right? As to what it means there's a dispute. Oh, that's different. I understand that. The legal significance of it is one thing, but we don't need a remand for that. But we would like an opportunity then to brief that and have the parties appropriately brief that to this court because I've got two pages in a reply brief that don't address any of that. There's nothing for me to shoot at in their brief. And doing it on the fly as best I can this morning is, I don't submit an adequate substitute for that. I appreciate the points that you made, Chief Judge Pryor, and I would like the opportunity to address them appropriately, whether in this court or in the district court. And if I'm entitled to address the merits of the fraudulent transfer argument on remand, I believe it would be appropriate for all of that to be addressed by the district court in the first instance. Let me ask a question this way, Mr. Shurker. Yes, sir. Chief Judge Pryor is suggesting, with regard to in personam jurisdiction, the underlying facts, the building blocks for finding in personam jurisdiction are there, they're in the record, and they're not disputed. Perhaps some of the inferences that might flow from those facts are, but the bedrock facts are not in dispute. Do you agree with that? And if not, tell me why not? Well, Your Honor, this has never come up in the case before. There's been no jurisdictional discovery. You're the one who asked us to affirm on this ground. I understand. And I take that burden seriously. Okay, so let's- Nor am I trying to shirk it. My point is- I mean, your point, you could only make that argument if you thought the record was adequate and sufficient- I do. And that the facts were undisputed to show that your client, that there's a lack of personal jurisdiction over your client, right? Yes, sir. With a footnote, if I might, based on the arguments my opponent made in the district court and here, if the court wishes to go beyond that, we'd request an opportunity to brief it either here or in the district court. Let me ask- It wouldn't be development of further facts. It would just be legal argument about the facts. As I stand here this morning, I believe that's correct, yes. Okay. That's what I- that's the question I want to zero in on. If this went back to the district court to address in personam jurisdiction, would there be fact disputes before the judge? Or would it simply be the inferences and conclusions that were drawn from those bedrock facts which were not in dispute, as you see it? As I stand here this morning, I believe the first scenario. But I also don't know what happens when you unleash this spring in the district court. I don't know what happens if they- if I see new arguments coming from the other side, having been educated this morning on why there might not be personal jurisdiction. And I can't- I can't tell you, Judge Marcus, as I stand here, that I might not believe at that point it would be appropriate for further fact finding. Because I don't know. I understand fully. I'm shooting in the dark here, so to speak. I believe I've- I've used my time. I appreciate the court's indulgence. Thank you very much. Thank you. Mr. Shelton, you've got five minutes. Thank you, Your Honor. Excuse me. Troy Shelton here on behalf of Appley Spodex. I want to clarify who Spodex is and what it does. Spodex is a provider of internet-based software that's used to display information about Forex transactions. When I say Forex, I mean foreign currency exchange. Spodex never touched any of the money in the transactions involved in this case, just like it never touches the money involved in the transactions. It merely provides the software that, here, the receivership entities use to display information. Let me make sure I understand this. Your client, though, is a defendant for the tort claims? Yes, Your Honor. And- and- and if- if we conclude that- that there's no standing for those claims, then there's no need to reach the Communications Act immunity issue, right? That's exactly right, Your Honor. The only problem would be, it appears to me at least, that based on our precedence, the district court technically should have dismissed the claims against your client without prejudice as opposed to with prejudice because it's a standing problem. You know, I've thought about that question a lot in this case. Isaiah, it was really the most recent case. I think it was affirming a dismissal on 12B6, even though it was receivership standing. I'm not sure if- if- if that's because we treat receivership standing as an Article 3 issue. You know, if it were an Article 3 issue, I would think it'd be without prejudice. It's a little bit confusing, but as I read several of our precedents, it appears to me that we have treated that as jurisdictional. And I won't quibble with that, Your Honor. Of course, whether it's literally standing in the Article 3 sense or whether it's standing in the sense that courts confuse the two and speak of prudential standing is the problem, I confess, that I have been grappling with in this case from the beginning. And the reason the answer to that question seems to me to be of some- some moment here today is if it's Article 3 standing, we're dismissing on the theory that this court of limited jurisdiction is without the power to address the matter at all, in which case it's necessarily without prejudice. Just said we can't address it, we don't have the power. If, on the other hand, we're talking about prudential standing, then we're looking at something that looks more like a merits decision. That is to say it fails to state a claim because there's no such cause of action under Florida law. And the answer to that question is most assuredly with prejudice. Case over. It's the end. Finite. You can't come back in another form at another time and replete it. So help me understand when you look at Isaiah and you look at Freeman, which comes from the state court, is this a question of the power of this court to adjudicate or is this a question of prudential standing which really means no cause of action under Florida law and therefore it fails to state a claim? Myself, your honor, I tend to think it's more of a prudential standing issue. It's like a statutory standing issue, which we normally consider as part of the merits. And I think that's why when Isaiah is looking at state law, like Freeman, for example, the Halloran decision, for example, if it were really an issue of Article III standing, I don't think it would be making a lot of sense to be looking at state court decisions. That's what makes me tend to think that it's more of a statute. So if we're looking at Article III standing, literally speaking, the malady here allegedly is that there was no concrete injury, in fact, sustained, right? Yes, sir. But this zombie corporation, to use the term that's been thrown around here, sustains sufficient injury to be able to sue under the statute, but doesn't sustain sufficient injury to sue under the common law. And that seems to me because Florida courts have told us that. Yes, your honor. And I think that's why I have trouble seeing it being an Article III issue. Here's the problem. Perelman affirmed the district court's dismissal without prejudice for lack of subject matter jurisdiction. Judge Rosenbaum dissented, thought that that should have been merits as opposed to be standing, as opposed to be jurisdiction, but it was a dissent. In Edwards, we permitted a receiver to bring a RICO claim because we said the receiver has standing. We appeared to use that in the Article III sense. In Lafferty, which we cited approvingly, the Third Circuit explained that a creditor's committee for a Ponzi scheme lacked Article III standing. In O'Halloran, we evaluated whether a trustee for a bankrupt Ponzi has Article III standing. Very clear. That decision, 2003, very clear. We said the bankruptcy trustee cannot sue anyone, including the defendant, for the Ponzi scheme torts because the bankrupt entity whose primary existence was as a perpetrator of the Ponzi scheme cannot be said to have suffered injury from the scheme it perpetrated. I think there's a lot of logic to the argument that this should be a merits inquiry, but it appears that all of our cases have treated it as an Article III inquiry. I think that sounds right when the court's considered it. The only case where I'd say on the other side was Isaiah affirming a 12B6, but just to be clear, I'm not saying that the court considered this question, whether it was an Article III jurisdictional question. Isaiah said the receivership entities lack standing to pursue the aiding and abetting claims, and it's affirming a dismissal for lack of jurisdiction. My recollection was Isaiah was affirming a 12B6 dismissal, not 12B1, but I- It was, but the problem with your argument here is that if you look closely at what Judge toward the end of the discussion on page 1306, he writes, and I quote, the corporation and the receiver who stands in the shoes of the corporation lack standing to pursue such tort claims because the corporation, quote, whose primary existence was as a perpetrator of the Ponzi scheme cannot be said to have suffered injury from the scheme it perpetrated, and there it's citing O'Halloran in the process. So there he's talking about injury, unless we're supposed to divine different kinds of injury, but it seems to me the problem is, while I would agree that our case law is confused on this point, and I see this as a 12B6 issue failure to state of claim because in Florida they choose not to give you a cause of action if you're a zombie sham corporation for common law torts. That isn't a question of whether I have the power to adjudicate the claim. It's a question of whether you can state a claim, and that's a very big difference. But if this case, Isaiah and the others, are really article three cases, it's got to be without prejudice. I don't disagree with that conclusion. If that's the logic, then that is the conclusion. And I'm not here to resist affirmed as modified with the instructions that the dismissal be without prejudice. We believe that would be the case. But I guess what I'm really asking, what Judge Pryor asked you a couple of times is, is there any way to resist that conclusion looking at our case law, and particularly Isaiah most recently? That this has to be a resolution without prejudice because the court doesn't have the power, because there's no standing, because there's no injury sustained by the zombie corporation. I think that if the court wanted to write a decision to say that it's a merits issue, it's not a article three issue. And I think that the court would have to say, when we use standing, sometimes we mean different things. For example, the like. You'd have to swallow an awful lot of case law to do that. I think you would. I think I'm far, far beyond my time. Does it sound to me like you're particularly interested in writing that for us? Because either way, it results in a dismissal for your client. That's correct, Your Honor. We would ask this court to affirm outright or affirm as modified so that the dismissal is without prejudice. Or to vacate and remand with instructions to dismiss without prejudice, right? One way or another. We are just fine with that, Your Honor. Okay, got it. Thank you. Mr. Perez. Three minutes. I don't have much to address. And I kind of agree with the court's inclination on the article three standing issue. But it is complicated and difficult to tell what these cases are talking about. I did want to- Do you read this as an article three standing issue or a prudential standing issue? And of course, the difference is whether this goes down on prejudice or not. Yeah, I think it leads to more of an article three issue because article three standing is concerned with whether there's an injury that's recompensable through litigation. And these are inquiring into whether there's been an injury to the corporations. And then what the cases then try to do is, well, to answer that, we have to distinguish between the corporations and the people who control them. I don't think there's any reading that says that the court would never have standing over the- Let me ask the question this way. Could a zombie corporation sustain injury, in fact, under FEDUPA, and yet the same zombie corporation could not sustain injury, in fact, under the common law toward common law in Florida for purposes of article three injury, in fact? Can you ask the question again? Yeah, I'm just curious whether they could sustain injury, in fact, on the theory that there was a FEDUPA claim, but not under the common law tort. Either they sustained injury, in fact, or they didn't. That's simply a question that if the answer is yes, I have the power to hear it. If the answer is no, I don't. I think they can sustain the injury, in fact, and that's why some of these cases treat these inquiries into the honesty of matters as an imperi delicto issue. And, you know, they'll moke or bevake of America, we cite in O'Halloran v. PricewaterhouseCoopers, which is a state court case, and we talk about it a lot in the briefs as an imperi delicto issue, even though Isaiah treats it as a standing issue. But there is a way, under the evil zombie theory, the corporations are certainly injured by the transfers of the money. And under tort claims, the corporations suffer injuries when third parties aid and abet the insiders to breach their fiduciary duties and to commit fraud. And the struggle is, looking for this honest person or honest stockholder, it's really, I think, better seen as more of an imperi delicto question. And standing should be limited to whether there has been an injury. Okay, Mr. Perez, we have your case. We're going to be in recess until tomorrow.